IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**CHRISTOPHER WELCH**                                                                                   **PLAINTIFF**

**V.**                                                                         **CAUSE NO. 3:09-CV-00782-CWR-FKB**

**PETER C. LOFTUS, CONTRACTORS
CARTAGE, INC., a Missouri Corporation,
AND TRUCK TRANSPORT INC., a                                                              DEFENDANTS
Missouri Corporation**

### ORDER DENYING DEFENDANTS' MOTION TO STRIKE

The above-styled matter is before the Court on the Motion of Defendants to Strike Plaintiff's Fourth Supplement to Designation of Experts as Untimely and Unduly Prejudicial, or in the Alternative, to Amend the Case Management Order by Extending Defendants' Deadline for Designation of Defense Experts, Completion of Discovery and Filing Motions and Continuing the Trial [Docket No. 157] (hereinafter "Motion to Strike").[1] The Court has reviewed the motion, the memoranda submitted by the parties, and the arguments offered at the status conference of June 21, 2011, and, after due consideration, has concluded that the motion should be denied.

This is a case regarding a collision between a motorcyclist, Christopher Welch, and an 18-wheeler driven by Peter Loftus. In the most general of terms, Welch alleges that Loftus acted negligently when he drove his 18-wheeler across a highway, and the defendants contend that the motorcyclist caused the crash by exceeding the legal speed limit.  More specifically, the

---

[1] Although the Defendants' motion seeks relief regarding the expert testimony of Michael Dilich *and* James Hannah, the Plaintiff has withdrawn the designation of Michael Dilich. *See* Plaintiff's Response in Opposition [Docket No. 165] at 3 n.3.

defendants claim that had "[Welch] not been speeding on his high performance motorcycle, [he] could have completely avoided the accident." Def. Mot. at 1-2.

During the discovery process, both sides designated expert witnesses who prepared reports that buttressed their theories. Specifically, reconstructionist James Hannah drafted a report on behalf of Welch concerning the crash and represented, among other things, that the legal speed limit at the crash site was 45 miles per hour. *See* Plaintiff's Response in Opposition [Docket No. 165] at 1-2. In turn, the defense commissioned a report from its own expert who, according to the defense, "relied heavily" on Hannah's findings. Def. Mot. at 2.

Welch's deadline to designate experts was November 3, 2010. The defense's deadline fell on December 31, 2010, and discovery closed on March 1, 2011.

On the day of the discovery deadline, Welch notified[2] Loftus that Hannah had prepared a supplement to his report. Specifically, Hannah had determined that, in his view, "based on [his] field investigation, review, research and experience," *see* Pl. Resp. at 2, the legal speed limit at the site of Welch's crash was not 45 miles per hour as he previously had averred but was, in reality, 55 miles per hour. *See* Defense Motion to Strike at 3. In preparation for his deposition, Hannah drove to the scene of the accident and realized that the only speed limit sign in the vicinity stated a limit of 55 miles per hour; consequently, the accident report's notation that the speed limit was 45 miles per hour must have been an error. Pl. Resp. at 2.

---

[2] Although the defense characterizes the disclosure as one that "flouted" the plaintiff's deadline for expert designations, Defendant's Reply [Docket No. 167] at 6, the Court is far from convinced that Hannah's supplementation is anything but the sort demanded by Rule 26(e)(2) of the Federal Rules of Civil Procedure, which requires disclosure of "[a]ny additions or changes to" an expert's report. "Rule 26(e)(2) provides parties with an *ongoing* duty to supplement expert reports." *Union Pump Co. v. Centrifugal Tech.*, 404 Fed. Appx. 899, 909 (5th Cir. 2010) (emphasis added).

The defense views this change as a "critical amendment" regarding the case's "core issue." Def. Mot. at 1. According to the defense, the only possible remedies are either the striking of Hannah's supplement or the extension of the defense's deadlines relevant to expert designations.

District courts are vested with broad discretion to govern the discovery process. *See, e.g., Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992) ("The trial judge's decision to curtail discovery is granted great deference . . . ."). Likewise, the scheduling decisions of district courts are subject to a degree of discretion that is "exceedingly wide." *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000).

The Fifth Circuit reviews such decisions for attention to a handful of factors, but in the case at bar, the inquiries of chief importance are the importance of the movant's request and the potential prejudice in denying that request. *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010).

The dispute at hand involves two sets of law: the laws of the State of Mississippi and the immutable laws of physics. They are utterly distinct, and in this instance one does not affect the other. More to the point, that is to say that the legal speed limit at the site of Welch's crash bears absolutely no relationship to the velocity at which he traveled prior to that crash. The defendants had the same opportunity that the plaintiff's expert enjoyed to determine what signs were posted on the highway. Defendants could have gone to the scene and conducted a visual inspection. Defendants could have contacted any number of agencies to ascertain or confirm the exact speed limit for that portion of the road way. For example, Defendants could have posed such inquiries to the Copiah County Sheriff's Department, the Crystal Springs Police Department, the

Mississippi Department of Public Safety, or the Mississippi Department of Transportation. To the extent that the Defendant criticizes the police officer for "now *suspiciously* claim[ing] his report is erroneous," Def. Mot. at 4 (emphasis added), that is a matter for the Defendants to address at trial through either direct or cross-examination. Moreover, "Defendants had more than a year to talk to the officer and determine what his position was as to the speed limit and the . . . [accuracy of] the accident report." Pl. Resp. at 6. For whatever reasons, Defendants chose not to avail themselves of those opportunities.

    Of course, if Hannah had supplemented his report with information relevant to a scientific calculation of Welch's pre-crash speed – for example, if he had reported the revelation of previously overlooked skid marks or the newly recalculated span between relevant points on the highway – then the defense might be entitled to reexamine its experts' conclusions in light of the new findings. But the *legal* question of whether the speed limit was 5 miles per hour, 45 miles per hour, 55 miles per hour, or 70 miles per hour has no bearing on the *scientific* question of Welch's speed immediately prior to the crash. Stated another way, for purposes of estimating Welch's velocity, it matters not what the speed limit was. What matters is the speed at which Welch was traveling and whether the conditions of the road and the surroundings could have or should have justified some other speed. A change in the speed limit itself does not change the actual, estimated or presumed speed at which Welch was traveling.

    Hannah's supplementation is materially irrelevant to the latter issue, and if it were relevant, the information ascertained by Hannah was equally available to the Defendants. Therefore, the Court holds without reservation that the defense's request is of minimal importance at best and that the denial of its request will visit no substantial prejudice upon its

case.

Therefore, the Motion to Strike [Docket No. 157] is denied.

SO ORDERED this Twenty-Fourth day of June 2011.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge